UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:22-cv-22962-AHS

GRACE ANGELO and KERSTIN THOMPSON,
on behalf of the NCLC 401(k) Plan,
themselves and all others similarly situated,

     **Plaintiffs,**

v.

NCL CORPORATION LTD, and
NCL (BAHAMAS) LTD., A BERMUDA
COMPANY,

     **Defendants.**

_____/

## PLAINTIFFS' UNOPPOSED[1] MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

Named Plaintiffs, Grace Angelo and Kerstin Thompson ("Plaintiffs"), individually and on behalf of all others similarly situated, and the NCLC 401(k) Plan, have entered into a Class Action Settlement (the "Settlement") which, subject to this Court's approval, would resolve all claims asserted in this ERISA lawsuit in exchange for a $615,000.00 cash payment.[2] The proposed Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class Members,

---

[1] Although Named Plaintiff Grace Angelo has already informed the Court that she consents to the Parties' Class Action settlement (*see* Doc. 42, "Plaintiff Grace Angelo consents to settlement in this matter as previously reached between the parties. The parties have exchanged settlement papers and they should be signed by parties shortly,"), Ms. Angelo's independent counsel is currently out of town through Sept. 7 so the Parties have not yet obtained Ms. Angelo's signature on the settlement agreement filed today. Additionally, Ms. Angelo's attorney stated he would like "something I think in this agreement that carves out my clients [*sic*] other settlements from release etc.," and that "Well I am not agreeing to any Motion, given that I don't agree with the agreement as to my client."). The Parties will promptly address Ms. Angelo's counsel's concerns upon the return of her counsel, and hope to have her signature by Sept. 7, 2023, or soon thereafter.

[2] All capitalized terms used in this Motion that are not otherwise defined shall have the meanings provided in the Settlement Agreement.

who are current or former participants in the NCLC 401(k) Plan ("the Plan") during the Settlement Class Period (September 16, 2016 through March 31, 2023)..   The Settlement Agreement is attached as Exhibit A.[3]

The proposed Settlement provides an immediate benefit to the Settlement Class in the form of a large cash payment. The Settlement is the product of hard-fought litigation, which included substantial motion practice, a robust pre-suit administrative remedies process that involved the exchange of nearly 3,800 substantive documents, the retention of knowledgeable and qualified experts who performed damage analyses, and arm's-length negotiations directed by a seasoned and respected mediator between experienced ERISA counsel.

Not only that, the benefits of the Settlement must be considered in the context of the risk that further protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and the proposed Settlement Class. The Defendants mounted a vigorous defense at all stages of the litigation, and, but for the Settlement, would have continued to do so through all future stages of the litigation.

In evaluating the terms of the Settlement Agreement, Class Counsel have concluded that the benefits provided to the Settlement Class make the Settlement in the best interests of Settlement Class Members in light of, among other considerations: (1) the substantial monetary relief afforded to the Settlement Class; (2) the risks and uncertainties of complex litigation such as this action; (3) the expense and length of time necessary to prosecute this action through trial, and appeals; and

---

[3] The remaining exhibits are attached to the Settlement Agreement as follows: Exhibit 1 — Preliminary Approval Order; Exhibit 2 — Final Approval Order; Exhibit 3 — Plan of Allocation; Exhibit 4A — Notice of Class Action Settlement and Fairness Hearing to Current Participants;  Exhibit 4 — Notice of Class Action Settlement and Fairness Hearing to Former and Current Participants; Exhibit 5 — CAFA Notice.

(4) the desirability of consummating the Settlement to provide prompt, effective relief to the Settlement Class Members.

Moreover, the proposed Settlement Agreement requires the parties to retain an independent fiduciary, who will act on behalf of the Plans in reviewing the Settlement for purposes of determining whether to authorize Plaintiffs' Released Claims on behalf of the Plans and the Settlement Class.  (Ex. A, Settlement Agreement § 3.1.)  *See* Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003).  The Plan's sponsor, NCL (Bahamas) Ltd. ("NCL"), has selected Gallagher Fiduciary Advisors, LLC, to serve in this capacity, a nationally-respected independent fiduciary.  This will provide another objective review to ensure the Settlement's fairness to the proposed Settlement Class.

For these reasons, and as explained further below, Plaintiffs respectfully submit this Unopposed Motion seeking entry of an Order that will (1) preliminarily approve the Settlement of the claims asserted in this action; (2) certify the proposed Settlement Class; (3) approve the form and manner of giving notice of the proposed Settlement and related matters to the Settlement Class; (4) appoint Class Counsel; and, (5) set a date for a hearing on final approval of the Settlement, the Plan of Allocation, and the motion for Attorneys' Fees and Costs.  The proposed Preliminary Approval Order addressing each of these topics is included as Exhibit 2 to the Settlement Agreement filed herewith.

## I.      LITIGATION AND SETTLEMENT HISTORY.

### A.      Pre-Suit Investigation.

Before filing this case, Class Counsel conducted a significant, in-depth analysis into Plaintiffs' claims and Defendants' Plan.  By way of specific example, on July 19, 2022, Class Counsel (on behalf of Ms. Angelo) sent a letter addressed to NCL "Plan Administrator" which

requested certain Plan documents and submitted an administrative claim pursuant to the Plan's mandatory administrative claims review process.  On August 25, 2022, NCL acknowledged receipt of the claim notice, notified Class Counsel that the claim notice had been forwarded to the NCL Investment Committee ("Committee") for review, and produced documents in response to Plaintiffs' document requests.  On October 14, 2022, the Committee notified Ms. Angelo of its decision to deny the administrative claim, and the reasons for its decision.  Ms. Angelo submitted an appeal on November 7, 2022, and the Committee denied the appeal on December 29, 2022.

During the course of the administrative process, NCL produced over 3,800 pages of documents relevant to Plaintiffs' claims, including (1) the Plan's governing documents and trust agreements, (2) the Plan's mandatory fee-related disclosures, (3) a full set of the Committee's minutes dating back to 2016, along with presentations and reports shared with the Committee at those meetings, (4) the Plan's contracts with Prudential, (5) all versions of the Plan's Investment Policy Statement during the putative class period, (6) documents relating to the Plan's recordkeeper requests for proposal in 2018 and 2022, and (7) Ms. Angelo's quarterly account statements.  On August 25, 2022, Defendants' Plan Administrator responded to Class Counsel's 29 U.S.C. § 1024(b)(4) request for information by providing approximately 3,800 pages of Plan-related documents.  Those documents, in turn, assisted Class Counsel with their analysis of the claims in this case, and the ERISA violations that formed the basis of this lawsuit.

On September 16, 2022, the Original Named Plaintiff, Grace Angelo, filed a Complaint in the United States District Court for the Southern District of Florida, Case No. 1:22-cv-22962-AHS. (ECF No. 1.)  She brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), alleging that Defendants breached their fiduciary duties relating to the management, operation, and administration of the Plans, and seeking to

recover all alleged losses resulting from each breach of duty under 29 U.S.C. § 1109(a), and other equitable relief.  (*See* ECF No. 1.)

On January 9, 2023, Defendants moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing pursuant Rule 12(b)(1). (ECF No. 9.) Defendants argued, among other things, that the Complaint failed to allege plausibly that Defendants breached their duty of loyalty, that the Plan paid excessive administrative/recordkeeping fees, or that the Defendants' process for evaluating investment options was deficient. (*Id.*) Ms. Angelo filed her Opposition on January 23, 2023 (ECF No. 17), along with supporting documentation. Additionally, she filed a Motion to Strike Extrinsic Evidence Attached to Defendants' Motion to Dismiss.  (ECF No. 18.)  The Defendants filed a Reply in support of its Motion to Dismiss (ECF No. 19) on January 30, 2023.  (ECF No. 19).

Next, on February 7, 2023, the Ms. Angelo and Defendants Filed a Joint Motion to Stay All Deadlines and Proceedings Pending Completion of Class-Wide Mediation.  (ECF No. 22). That Motion was granted by Order dated February 7, 2023.  (ECF No. 23)  At that point, the case was stayed to allow the parties sufficient time to mediate this case on a class basis.

C.  **Mediation / Settlement Negotiations**.

On April 3, 2023, Ms. Angelo and Defendants and their respective counsel engaged in a full-day videoconference mediation with Robert Meyer, Esq. of JAMS, who has extensive experience handling ERISA fiduciary-breach lawsuits similar to this one.  After extensive arms-length negotiations—which lasted into evening—the they reached an agreement in principle, which led to the Settlement Agreement attached hereto for the Court's review.

In advance of the mediation, the participants submitted mediation briefs—which included damage analyses conducted by Plaintiffs' expert—along with and settlement proposals.  The

participants also held a pre-mediation telephone conference with Bob Meyer of JAMS, during which they exchanged additional information that helped ensure mediation would be productive. The mediation was successful, resulting in an agreement on the principal terms of the settlement, memorialized in a fully-executed term sheet, which was finalized during the evening April 3, 2023. During the months that followed, the parties negotiated the detailed terms of the Settlement Agreement and exhibits thereto, which are provided to the Court with this Motion.

        **D.**    <u>**Ms. Angelo and Ms. Thompson.**</u>

        **1.**    **Ms. Angelo.**

As stated above, On April 3, 2023, mediation was conducted with the assistance of JAMS mediator, Robert A. Meyer (one of the country's leading class action mediators in ERISA class action cases). The mediation lasted approximately twelve hours. It was a long and exhausting process. Eventually, the participants reached an agreement, subject to Court approval, to resolve this case on a class-wide basis.   The mediator requested them to draft and sign a term sheet that included certain material components of the parties' agreement before the conclusion of the mediation. The term sheet was drafted, edited, and eventually signed by all participants before the conclusion of the mediation.

The following day, Ms. Angelo and the Defendants jointly filed a mediation report to inform the court that the case had "settled in full." (ECF 24.)  Thereafter, the parties' counsel began drafting the appropriate more fulsome settlement documents.  Thereafter, Ms. Angelo initially expressed some reluctance about continuing with the settlement.  So, as a result, Class Counsel sought permission to withdraw as counsel for Ms. Angelo in her individual capacity.  That Motion was granted by the Court on August 8, 2023.  (ECF No. 33).  Ms. Angelo was given until May 18, 2023, to find new counsel to represent her individually.  (ECF No. 33).  On May 21, 2023, attorney

Scott M. Beheren filed a notice of appearance to appear on her behalf.  (ECF No. 35.)  Mr. Beheren represents Ms. Angelo in her individual capacity.  He does not seek to be included as Class Counsel here.

On August 1, 2023, Ms. Angelo filed a notice of consent with the Court indicating as follows: "Plaintiff Grace Angelo consents to settlement in this matter as previously reached between the parties. The parties have exchanged settlement papers and they should be signed by parties shortly." (Doc. 42).  Ms. Angelo has executed the attached Settlement Agreement.

Finally, as to Ms. Angelo, in accordance with Fed.R.Civ.P. 23(e)(3), the Parties want the Court to know that Ms. Angelo entered into a separate general release agreement for $12,000, which is being paid separately and not from the Settlement Fund.[4]

### 2.    Ms. Thompson.

Another class member, Kerstin Thompson, retained the undersigned attorneys and agree to serve as a second Class Representative. To that end, Class Counsel filed a Motion to Amend adding Ms. Thompson as an additional Named Plaintiff.  (ECF Nos. 31, 37).  Ms. Thompson is now a Named Plaintiff and is prepared to serve as the second class representative.  Defendants have no objection to Ms. Thompson serving as the second class representative.  The Parties respectfully ask that this Honorable Court permit Ms. Thompson to serve as the second class representative to

---

[4] Payments in settlement of unrelated individual claims are permissible and do not violate the Eleventh Circuit's prohibition against incentive payments, as this Court recently found under similar circumstances in *Baja v. Costco* (S.D. Fla. 0:21-cv-61210-AHS, December 20, 2022)("….general release payment[]s do[] not constitute a prohibited incentive award as described in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). The general release payment was made in consideration for [Angelo's] release of any and all claims [s]he individually could have or did assert in the action, including claims under federal law, state or local laws, statutes, regulations, ordinances, or federal or state common law. Thus, the general release payment cannot reasonably be characterized as an impermissible 'salary,' 'bounty,' or payment given to a class representative 'simply by reason of his status.' *See Johnson*, 975 F.3d at 1259 n.9 (citations omitted). Johnson specifically dealt with an explicit 'incentive payment' awarded in 'acknowledgement of [the class representative's] role in prosecuting the case on behalf of the class members.' Id. at 1248. That is nothing like the case here.")

ensure the rights of the class are protected and, additionally, to protect the settlement both sides worked very hard to reach (at tremendous expense).

Finally, as to Ms. Thompson, in accordance with Fed.R.Civ.P. 23(e)(3), the Parties want the Court to know that Ms. Thompson entered into a separate general release agreement for $1,000, which is being paid separately and not from the Settlement Fund.[5]

**D.      The Settlement Agreement.**

**1.      Benefits to Class Members.**

The Settlement provides for a monetary payment of $615,000.00 as compensation to the Settlement Class. (*See* Ex. A, Settlement Agreement § 4.2.) This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; and any Class Counsel fees and costs approved by the Court. (*Id*. § 4.2.) The remaining "Net Settlement Amount" will be distributed to Settlement Class Members pursuant to the proposed Plan of Allocation. (*See id.* §§ 4.7.1, 4.7.2.)

For those Settlement Class Members with an active account in one or more of the Plans as of March 31, 2023, and who are not Zero Account Balance Current Participants at the time settlement payments are made, automatic settlement payments will be made directly to their Plan accounts.   For those Settlement Class Members who are a Zero Account Balance Current Participants, their settlement payments will be made via check to the last known address of such participants. Settlement Class Members who do not have an active account in any of the Plans as of March 31, 2023, will submit—either electronically or by mail—a simple claim form to become eligible to receive a cash payment via check.

---

[5] *See footnote 3 supra.*

Under the terms of the Settlement Agreement, within thirty (30) days of the entry of the Preliminary Approval Order, Defendants shall pay $50,000 into the Qualified Settlement Fund to allow for payment of initial Administrative Expenses and Independent Fiduciary Expenses that may arise before the Court's entry of the Final Approval Order and Judgment.  (*See* Ex. A, Settlement Agreement § 4.2.)  Within thirty (30) calendar days of the Effective Date of the Settlement Agreement, Defendants shall pay an additional $565,000 into the Qualified Settlement Fund.  (*See* Ex. A, Settlement Agreement § 4.2.) The sum of these two payments, $615,000, shall constitute the "Gross Settlement Amount. (*See* Ex. A, Settlement Agreement § 4.2.)

The Settlement Fund will be administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 2.43.) The Net Settlement Amount shall be distributed to Settlement Class Members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the Parties). Any Net Settlement Amount remaining after the settlement distributions are made and all Administrative Costs or applicable taxes have been paid, if any, shall be returned to the Plans to defray administrative fees and expenses of the Plans; there will be no *cy pres* payment or reversion to Defendants.

### 2.   <u>Retention of an Independent Fiduciary</u>.

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement Agreement provides that NCL will select an Independent Fiduciary to review the Settlement and provide, if the Independent Fiduciary concludes that it is appropriate, the authorization required by that Exemption on behalf of the Plans. The Independent Fiduciary must provide a report memorializing its determination prior to the final approval hearing set by this Court. Accordingly, in addition to this Court's review and approval, the Settlement will be evaluated by an experienced independent fiduciary whose

sole loyalty is to the Plans, and that fiduciary will evaluate the Settlement as to whether it is (1) reasonable in the light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest.

        **3.**      **Attorneys' Fees and Costs.**

Any Attorneys' Fees and Costs the Court may award will be paid from the Gross Settlement Fund. (*See generally* Article III of the Stip.)  Class Counsel will petition the Court for an award of attorneys' fees not to exceed one-third (33.3%) of the Gross Settlement Amount, plus reasonable expenses. (*Id.*)  The Settlement is not contingent on any such fees, costs, or compensation being awarded.  Thus, if the Court denies the petition for Attorneys' Fees and Costs, in whole or part, such denial will have <u>no impact</u> on the validity or enforceability of the Settlement.  (*Id.* §§ 7.1, 7.2, 11.3.)

In the interest of full disclosure, both Plaintiffs have also agreed to provide Defendants general releases of all possible claims they have, or ever had, against Defendants in exchange for a nominal amount.  This amount is being paid outside of the Settlement Fund.  Notably, Ms. Angelo (in her individual capacity) made a demand asserting FMLA and FLSA claims, while Ms. Thompson had separately filed an earlier EEOC Charge against Defendants on her own behalf. Defendants wanted general releases from Plaintiffs to ensure closure with them.

        **4.**      **Release of Claims.**

Under the terms of the Settlement Agreement, Plaintiffs and the Settlement Class Members, on their own behalf and on behalf of their current and former beneficiaries, their representatives, and their successors-in-interest, and the Plan absolutely and unconditionally release and forever discharge Defendants and the other Released Parties from all Released Claims, as set forth in more detail in Section 8 of the Settlement Agreement. (*Id.* §§ 2.41, 2.42.)

5.      **Notice and Objections.**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Class and an opportunity for Settlement Class Members to object to approval of the Settlement. The proposed form and method of notice of the proposed Settlement satisfy all due process considerations and meet the requirements under Rule 23(e)(1).

The proposed Settlement Notice is attached to the Settlement Agreement as Exhibit 3. The Settlement Notice will fully apprise Settlement Class Members of the existence of the lawsuit, the Settlement, and information they need to make informed decisions about their rights, including (1) the terms of the Settlement; (2) the nature and extent of the Released Claims and Released Parties; (3) the maximum attorneys' fees and expenses Class Counsel will seek; (4) the procedure and timing for objecting to the Settlement; (5) the date and place of the final fairness hearing; and (6) the website that will contain the settlement documents and other  information about the Settlement and the litigation.

The notice plan consists of the following steps:  First, the Settlement Notice will be sent by electronic means, or by first-class mail, to all Settlement Class Members identified by the Settlement Administrator, using the last mailing address known to the Plans' recordkeepers. Second, the Settlement Administrator will provide a dynamic website that will provide the Settlement Class Members answers to frequently asked questions, court documents, and the ability to email the Settlement Administrator with questions. Third, the Settlement Administrator will provide an IVR call center, which Settlement Class members will be able to call toll-free 24 hours a day, 7 days a week. Fourth, the Settlement Administrator must take additional action to reach those Settlement Class Members whose notice letters are returned as undeliverable.  Accordingly,

both the form of notice and proposed procedures for notice satisfy the requirements of due process, and the Court should approve the notice plan as adequate.

II.    **ARGUMENT**.

A.    **The Settlement Class Meets All Requirements of 23(a) and (b)(1)**.

As part of the Settlement, Plaintiffs propose, and the Defendants do not object to, for settlement purposes only, certification of the Settlement Class defined as follows:

> All persons who participated in the NCLC 401(k) Plan at any time from September 16, 2016, through March 31, 2023_ (the "Settlement Class Period"), including any Beneficiary of a deceased person who participated in any of the Plans at any time during the Settlement Class Period, and any Alternate Payee of a person subject to a Qualified Domestic Relations Order who participated in any of the Plans at any time during the Settlement Class Period.

> Excluded from this Settlement Class are any individuals who were members of the Plans' fiduciary committees during the Settlement Class Period.

Before assessing whether the Settlement is within the range of reasonableness for the purposes of preliminary approval, the Court must conduct an independent class certification analysis. The Settlement Class meets the requirements for certification under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(1).

A class may be certified under Rule 23(a) when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. "These prerequisites are commonly referred to as the requirements of numerosity, commonality, typicality, and adequacy of representation." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 683–84 (S.D. Fla. 2014).  Plaintiffs satisfy each of these four requirements, as discussed below.

B.      **Rule 23(a)**.

1.      **Numerosity**.

Rule 23(a)(1) requires Plaintiffs to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Here, there are more than 2,400 Settlement Class Members.  Thus, numerosity is satisfied. *See Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

2.      **Commonality**.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).  "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011).

The commonality requirement is easily satisfied here.  The legal and factual questions linking Settlement Class Members are related to the resolution of the litigation of every Settlement Class Member's claims.  Not only that, common questions of law and fact are presented about whether Defendants breached their fiduciary duties concerning the Plans' recordkeeping and administrative fees.  Indeed, all of the Plans were subject to the same contractual fee arrangement with Prudential that Plaintiffs' claims resulted in both of those entities receiving excessive compensation for the recordkeeping services they provided. This claim and others asserted in the litigation are subject to common proof, including:

a.      Whether Defendants are fiduciaries of the Plans under ERISA;

b.      How Defendants selected, retained and monitored the Plans' recordkeepers, both with respect to their services and fees;

c.      Whether Defendants, in arranging for, selecting, and retaining the Plans' service providers discharged its alleged fiduciary duties with respect to the Plans in a prudent manner ; and

d.      Whether Defendants' actions proximately caused losses to the Plans and, if so, the appropriate relief to which the Plans are entitled.

These are the core issues in this case and the alleged bases for the harms that unify all Settlement Class Members. The evidence necessary to resolve these issues is the same. Classes consisting of ERISA plan participants are routinely certified in this and other courts. e.g., *In re Suntrust Banks, Inc. ERISA Litig*., No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *6 (N.D. Ga. Aug. 17, 2016) (finding breach of fiduciary duty satisfied the commonality requirement); *Pantoja v. Edward Zengel & Son Exp., Inc.,* No. 10-20663-CIV, 2011 WL 7657382 (S.D. Fla. Aug. 5, 2011).  Thus, the commonality requirement is satisfied.

### 3.      Typicality.

Rule 23(a)(3) requires plaintiffs to show that their claims "are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984). But a plaintiff's claims . . . need not be identical to the proposed class, and minor variations will not render the plaintiff's claims atypical." *Id*. Instead, a plaintiff satisfies the typicality requirement by showing that the claims "arise from the same event or pattern or practice and are based on the same legal theory." *Id*. "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co*., 633 F.3d 574, 586 (7th Cir. 2011).

In this context, the typicality requirement is satisfied if the class representative is "invested in the same funds as the class members" or were participants in the same plans. *Id*. Such is the case here. For the same reasons that Plaintiffs' claims are common to all Settlement Class Members, they are also typical. Plaintiffs, like other Settlement Class Members, (1) seek relief for the same losses arising from allegedly excessive administrative fees or imprudent investments, (2) caused by the same alleged breaches of fiduciary duties, (3) affecting the same Plans and funds. *Cf. Spano*, 633 F.3d at 586-87, 589-90. "Nothing more is required to satisfy Rule 23." *Kraft*, 270 F.R.D. at 367; *see also Gamache v. Hogue,* 338 F.R.D. 275, 288 (M.D. Ga. 2021) ("Plaintiffs have met their burden as to typicality. The members claims are based on the same events and legal theories: breach of fiduciary duties and monitoring the [plan].")

### 4.    <u>Adequacy.</u>

The final requirement of Rule 23(a) is that the Plaintiffs will fairly and adequately protect the interests of the Settlement Class. Fed. R. Civ. P. 23(a)(4). This requirement encompasses two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharms., Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003). The central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

Here, both proposed Class Representatives. were participants in the Plan and allegedly suffered a pro rata loss as a result of the Defendants' alleged fiduciary breaches with regard to excessive administrative and recordkeeping fees, among other alleged problems. Like other Settlement Class Members, the proposed class representatives seek to maximize the recovery to the Settlement Class through this litigation. *George v. Kraft Foods Global, Inc*., 251 F.R.D. 338,

348 (N.D. Ill. 2008). Thus, the Class Representatives' interests are fully aligned with the interests of Settlement Class Members. Furthermore, the Class Representatives remain willing and able to take the required role in the litigation to protect the interests of those they seek to represent.

As one district court has noted, it is sufficient for an ERISA case if a proposed class representative "understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan" and, further, that she "understands her obligation to assist her attorneys and testify." *Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004). Both Ms. Angelo and Ms. Thompson have that required understanding and have demonstrated a commitment to this case by providing support, including as to key terms of the Settlement in the months since the agreement was reached.

Finally, as discussed further below, Class Counsel has  significant experience in ERISA class actions. In sum, both Ms. Angelo and Ms. Thompson are adequate representatives of the proposed Settlement Class.

### C.    The Settlement Satisfies Rule 23(b)(1).

Fed. R. Civ. P. 23(b)(1)(B) provides that a class may be certified where "prosecuting separate actions by . . . individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Courts in this Circuit and elsewhere have certified classes in ERISA breach of fiduciary duty actions, like this case, under Rule 23(b)(1). *See, e.g., Agnone v. Camden Cnty., Ga.*, No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634, at *7–8 (S.D. Ga. Mar. 26, 2019); *see also Clark v. Duke Univ.*, No. 1:16-CV-

1044, 2018 WL 1801946, at *9–10 (M.D.N.C. Apr. 13, 2018). Consistent with those decisions, the proposed Settlement Class satisfies Rule 23(b)(1).

Rule 23(b)(1)(B) applies where "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). "Classic examples" of suits appropriate for class resolution under Rule 23(b)(1)(B) classes include "actions charging a breach of trust by a . . . fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Id.* This is the type of case that Rule 23(b)(1) envisioned. Plaintiffs allege that the Defendants breached their fiduciary duties to the Plan and that the breach similarly affected all participants and beneficiaries of the Plan. Therefore, the proposed class therefore satisfies Rule 23(b)(1)(A).

### D.      <u>The Settlement Also Meets the Requirements of Rule 23(e) for Approval</u>.

After preliminarily certifying this case as a class action for settlement purposes pursuant to Rule 23(a) and Rule 23(b)(1)(A), the Court should next look to Rule 23(e) to determine whether the settlement is fair, reasonable, and adequate.

Rule 23(e) requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009).  "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class."  *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition

to, the settlement. *Id.*   The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Under the first step of Rule 23(e)(2), Courts look to whether: (1) the class representative and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.  This standard is satisfied here, and the Court should enter an order Preliminarily Approving the Class Action Settlement Agreement.

1.      **The Class Representatives and Class Counsel Have Adequately Represented the Class.**

The proposed Class Representatives, Grace Angelo and Kerstin Thompson, along with their counsel, adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The proposed Class Representatives are adequate given that their interests align fully with those of the Settlement Class. They have both actively participated in settlement discussions, and have volunteered to assist counsel with whatever is necessary to ensure this settlement is held together.  There are no obvious conflicts of interest between either Ms. Angelo nor Ms. Thompson and the Settlement Class. They, along with Class Counsel, secured a $615,000 settlement from a sophisticated and well-represented Defendants for the Settlement Class Members she seeks to represent.

With respect to Class Counsel, the proposed attorneys have decades of and extensive class action experience, as detailed in the supporting declarations attached to this Motion by Class Counsel, including Michael McKay from McKay Law, LLC, along with Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek, of Wenzel Fenton Cabassa, P.A.  While Mr. Behren is certainly an excellent attorney, Plaintiffs do not seek to include him as class counsel.

For example, just a few months ago, Judge Singhal approved the undersigned, Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek, of Wenzel Fenton Cabassa, P.A., as class counsel in an ERISA case styled *Baja v. Costco Wholesale Corporation*, Case No.: 0:21-cv-61210-AHS (S.D. Fla. Dec. 19, 2022)(Doc. 56).  Similarly, the proposed Class Counsel was appointed as class counsel in a similar 401k case brought against the University of Miami in *Santiago et al v. University of Miami,* 1:20-cv-21784-DPG (appointed as class counsel in ERISA class action involving university retirement plan and approximately 20,000 class members).

When, as here, the Plaintiffs are represented by counsel who have significant experience in class-action litigation and a documented history of court-approved class action settlements in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v.*

*Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom.*
*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in
deciding whether a proposed settlement warrants approval, the informed and reasoned judgment
of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation
are entitled to great deference"). In evaluating class action settlements, the "Court is entitled to
rely upon the judgment of experienced counsel for the parties . . . [and] should be hesitant to
substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.
1977); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga.
2000) (same). For these reasons, both the Plaintiffs and Class Counsel satisfy Rule 23(e)(2)'s
adequacy requirement.

### 2.  The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.

The proposed Settlement is the product of arm's length negotiations and mediation between
the Parties and their counsel. Thus, the next Rule 23(e)(2) factor is also satisfied.

The Settlement was achieved only after arm's-length negotiations between well-informed
and experienced counsel after hard-fought motion practice and a substantial exchange of
discovery. To be sure, all counsel involved in the negotiations are experienced in handling class
action litigation and complex litigation and are clearly capable of assessing the strengths and
weaknesses of their respective positions. Where there "is no evidence of any kind that the parties
or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the
proposed settlement … counsel's informed recommendation of the agreement is persuasive that
approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D.
Fla. 2005). Counsel on both sides are experienced and thoroughly familiar with the factual and
legal issues presented. It is recognized that the opinion of experienced and informed counsel

supporting the settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co*., 706 F.2d 1144, 1149 (11th Cir. 1983).

Besides being highly experienced, the Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation. *Carpenters Health & Welfare Fund v. Coca-Cola Co*., No. 00-2838, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008).

Additionally, the settlement was ultimately the result of a successful mediation before a class-action mediator, and several months of further negotiations thereafter. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In sum, the attorneys who conducted the negotiations for the Settlement Class have years of experience in conducting complex class action litigation and were thoroughly conversant with the strengths and weaknesses of the case. Class Counsel's decision on settlement should be given great deference.  This also weighs in favor of approval.  *See Gevaerts v. TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.").

        3.      **The Settlement Provides Significant Relief to Class Members.**

The Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. In fact, the Settlement requires the Defendants to create a common fund of up to $615,000.00 for the benefit of the proposed Settlement Class.

Moreover, the $615,000.00 million recovery falls well within the range of reasonableness in this case, as it is a substantial percentage of the estimated recovery Plaintiffs' counsel estimated could be recovered if successful in litigating the case through trial (exclusive of attorneys' fees and costs). (*See* Decl. of Brandon J. Hill, ¶ 26.) *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

Absent this Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court. Liability is heavily contested, and both sides would face considerable risks should the litigation proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial recovery for Settlement Class Members.

The $615,000.00 cash payment represents a substantial recovery. These results are particularly beneficial to the Settlement Class in light of the risks posed by continued litigation, including the possibility of the Court ultimately finding no liability or the inability to prove damages. While Plaintiffs believe that the claims asserted against the Defendants are meritorious, Plaintiffs recognize that the Defendants strongly disagree and that Plaintiffs' claims present a number of substantial risks to establishing both liability and damages. There is no certainty that Plaintiffs would beat Defendants' motion to dismiss, avoided summary judgment, had a class certified, and even if they had, there is no certainty that they would have prevailed at trial. The Defendants mounted a vigorous defense to Plaintiffs' claims and have set forth multiple defenses in their pleadings.

Additionally, with respect to the primary question of liability, the Defendants claim that they properly managed their retirement Plans and had prudent processes in place to evaluate the

Plans' investments and their recordkeeping and administrative fees. The Defendants claim that their choices were within the range of choices made by other similarly-situated plan fiduciaries at the time they were made. The Defendants also contend that Plaintiffs overstated the potential damages they could recover at trial, even assuming Plaintiffs could establish liability.

Notably, the only similar case to be tried resulted in a verdict for defendants on all claims. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 317 (S.D.N.Y. 2018). Following appeal, the Second Circuit affirmed the trial judgment in its entirety. *Sacerdote v. New York University,* Case No. 18-2707-cv (2nd. Cir. August 16, 2021.) As the case against NYU clearly illustrates, Plaintiffs faced a substantial risk that they could litigate this case for years, at significant expense, only to lose at trial and on appeal, recovering nothing for the class.

In sum, under the Settlement, the Settlement Class Members can quickly realize a portion of their alleged damages from the Settlement Fund.  Even if the amount is less than the minimum that could have been recovered through successful litigation, the settlement is fair, reasonable, and adequate.

4.      **The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the Settlement treats class members equitably. As discussed, the Settlement Class Members who with an active account in one or more Plans as of March 31, 2023, will receive automatic settlement payments made directly to their Plan account(s). And if any of these Settlement Class Members no longer have an active account at the time of payment, then they will receive their settlement payment by check.  Meanwhile, Settlement Class Members who do not have an active account in the Plans as of March 31, 2023, will simply submit a claim form, which will entitle them to receive a settlement payment by check.  A detailed "Plan of Allocation" summarized above is set forth in Section 6 of the Settlement Agreement.

5.      **The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members, and might have resulted in no relief at all.  Moreover, Defendant likely would have appealed any judgment entered against it, resulting in further expense and delay. Complex litigation like this "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wald v. Wolfson* (*In re U.S. Oil and Gas*), 967 F.2d 489, 493 (11th Cir. 1992). By entering into the Settlement now, Plaintiffs saved precious time and money, and avoided the risks associated with further litigation, trial, and appeals.

E.      **The Proposed Notices are Adequate, Appropriate, and Warranted.**

Finally, due process and Federal Rule of Civil Procedure 23(e) do not require that each Settlement Class Member receive settlement notice, but they do require that settlement notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974). As discussed above, the proposed form and method of Settlement Notice here satisfy all due process considerations and the requirements under Rule 23(e)(1).

III.    **CONCLUSION**

The Court should grant Plaintiffs' Unopposed Motion for Preliminary Approval of the Parties' Class Action Settlement.  A Proposed Order is attached as Exhibit 2 to the Settlement Agreement.

<u>**Certificate of Compliance with Local Rule 7.1**</u>

Pursuant to Local Rule 7.1 of the District Court for the Southern District of Florida, counsel

for Plaintiffs certifies that Defendants do not oppose this Motion.

Dated this 1st  day of September, 2023.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Ave., Suite 300
Tampa, Florida 33602
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com

**MICHAEL C. MCKAY**
*Pro Hac Vice*
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mckay@mckay.law

*Class Counsel and Counsel for Kerstin Thompson*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 1st day of September, 2023, I electronically filed the foregoing

with the Clerk of the Court through the CM/ECF system, which will send a notice of electronic

filing to counsel for all parties of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
