**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO: 1:22-cv-22962-AHS**

**GRACE ANGELO and KERSTIN THOMPSON,**
**on behalf of the NCLC 401(k) Plan,**
**themselves and all others similarly situated,**

      **Plaintiffs,**

**v.**

**NCL CORPORATION LTD, and**
**NCL (BAHAMAS) LTD., A BERMUDA**
**COMPANY,**

      **Defendants.**
_____/

**CLASS REPRESENTATIVE KRISTIN THOMPSON'S UNOPPOSED MOTION**
**<u>FOR FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT</u>**

Class Representative, Kristin Thompson ("Plaintiff"),[1] individually and on behalf of all others similarly situated ("Settlement Class"), and the NCLC 401(k) Plan, have entered into a Class Action Settlement (the "Settlement") which, subject to this Court's final approval, would resolve all claims asserted in this ERISA lawsuit in exchange for a $615,000.00 cash payment. The proposed Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class Members, who are current or former participants in the NCLC 401(k) Plan ("the Plan") during the Settlement Class Period (September 16, 2016 through March 31, 2023).

On September 19, 2023, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendants. (ECF 50).  Following entry of that Order, the Settlement Administrator sent the Court-approved Notice of Settlement to all Settlement Class Members.  The Court-approved Settlement Notice reached an estimated 99.66% of the 7,624 class members.  (*See* Exhibit B, Sworn Declaration from Mark Unkefer, Settlement Administrator for American Legal Claim Services, LLC ("Unkefer Decl.") ¶¶ 5-8.  Importantly, the Settlement Class Members' reactions to the Settlement were overwhelmingly positive.  **Not a single objection was filed**.  Additionally, the undersigned has personally spoken to dozens of class members, all of whom were supportive of the Settlement.  (*See* Exhibit C, Sworn Declaration from Brandon J. Hill ("Hill Decl."), ¶¶ 27-28).

Further, attached as Exhibit D is a report from Gallagher Fiduciary Advisors, LLC ("Gallagher").  Gallagher was appointed to act as an independent fiduciary of the Plan in connection with the proposed settlement.  Gallagher's specific responsibilities pursuant to its

---

[1] This Motion is being filed Plaintiff Kristin Thompson and the Class only, not Ms. Angelo, in an effort to protect the Class.  Ms. Angelo is represented by separate counsel who, under the Court's Order granting Preliminary Approval (*see* ECF. 50, p. 3, ¶ 2), is not named as Class Counsel.

agreement and the Settlement are to (i) determine whether to approve and authorize the settlement of Released Claims on behalf of the Plan and (ii) determine whether the Settlement satisfies the requirements of the Prohibited Transaction Class Exemption 2003-39 (the "Class Exemption").

Ultimately, Gallagher fully-supported the settlement and, in doing so, reached the following conclusion:

> After a thorough review of the pleadings and interviews with the parties' counsel and the mediator, Gallagher has concluded that an arm's-length Settlement was achieved after hard-fought negotiations between the parties and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone. The fee request is also reasonable in light of the effort expended by Plaintiffs' counsel in the Litigation.

(Exhibit D, p. 3).

Thus, not only has this Honorable Court preliminarily approved the settlement agreement, so have the Settlement Class Members, and so has the independent fiduciary, Gallagher.

In sum, little has changed since the Court's Order preliminarily approving the Settlement, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A, which was previously made part of the Settlement Agreement. In further support of this Motion, Plaintiff states the following:

## I.   LITIGATION AND SETTLEMENT HISTORY.

### A.   Pre-Suit Investigation.

Before filing this case, Class Counsel conducted a significant, in-depth analysis into Plaintiff's claims and Defendants' Plan. By way of specific example, on July 19, 2022, Class Counsel (on behalf of Ms. Angelo) sent a letter addressed to NCL "Plan Administrator" which requested certain Plan documents and submitted an administrative claim pursuant to the Plan's mandatory administrative claims review process. On August 25, 2022, NCL acknowledged receipt

of the claim notice, notified Class Counsel that the claim notice had been forwarded to the NCL Investment Committee ("Committee") for review, and produced documents in response to Plaintiff's document requests.  On October 14, 2022, the Committee notified Ms. Angelo of its decision to deny the administrative claim, and the reasons for its decision.  Ms. Angelo submitted an appeal on November 7, 2022, and the Committee denied the appeal on December 29, 2022.

During the course of the administrative process, NCL produced over 3,800 pages of documents relevant to Plaintiff's claims, including (1) the Plan's governing documents and trust agreements, (2) the Plan's mandatory fee-related disclosures, (3) a full set of the Committee's minutes dating back to 2016, along with presentations and reports shared with the Committee at those meetings, (4) the Plan's contracts with Prudential, (5) all versions of the Plan's Investment Policy Statement during the putative class period, (6) documents relating to the Plan's recordkeeper requests for proposal in 2018 and 2022, and (7) Ms. Angelo's quarterly account statements.  On August 25, 2022, Defendants' Plan Administrator responded to Class Counsel's 29 U.S.C. § 1024(b)(4) request for information by providing more Plan-related documents.  Those documents, in turn, assisted Class Counsel with their analysis of the claims in this case, and the facts and law that formed the basis of this lawsuit.

On September 16, 2022, the Original Named Plaintiff, Grace Angelo, filed a Complaint in the United States District Court for the Southern District of Florida, Case No. 1:22-cv-22962-AHS. (ECF No. 1.)  She brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), alleging that Defendants breached their fiduciary duties relating to the management, operation, and administration of the Plan, and seeking to recover all alleged losses resulting from each breach of duty under 29 U.S.C. § 1109(a), and other equitable relief.  (*See* ECF No. 1.)

On January 9, 2023, Defendants moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing pursuant Rule 12(b)(1). (ECF No. 9.) Defendants argued, among other things, that the Complaint failed to allege plausibly that (i) Defendants breached their duty of loyalty;  (ii) the Plan paid excessive administrative/recordkeeping fees; or (iii) the Defendants' process for evaluating investment options was deficient. (*Id*.) Ms. Angelo filed her Opposition on January 23, 2023 (ECF No. 17), along with supporting documentation. Additionally, she filed a Motion to Strike Extrinsic Evidence Attached to Defendants' Motion to Dismiss.  (ECF No. 18).  Defendants filed a Reply in support of their Motion to Dismiss (ECF No. 19) on January 30, 2023.  (ECF No. 19).

Next, on February 7, 2023, Ms. Angelo and Defendants Filed a Joint Motion to Stay All Deadlines and Proceedings Pending Completion of Class-Wide Mediation.  (ECF No. 22).  That Motion was granted by Order dated February 7, 2023.  (ECF No. 23).  At that point, the litigation was stayed while the parties actively worked to refine theories, develop expert opinions, and articulate damage models to allow the parties to successfully mediate this case on a class-wide basis.

**B.**   **Mediation / Settlement Negotiations.**

On April 3, 2023, Ms. Angelo and Defendants and their respective counsel engaged in a full-day mediation with Robert Meyer, Esq. of JAMS; Mediator Meyer has extensive experience handling ERISA fiduciary-breach lawsuits similar to this one.   After extensive arms-length negotiations during the mediation—which lasted into evening—the parties reached a tentative good-faith settlement agreement, which led to the Settlement Agreement attached hereto for the Court's review.

In advance of the mediation, the parties conducted fact and legal research, crafted comprehensive mediation briefs—which included damage analyses conducted by one of Plaintiff's three expert witnesses—along with settlement proposals. The parties also held a pre-mediation telephone conference with Mediator Meyer of JAMS, during which they exchanged additional information that helped ensure mediation would be productive. The mediation was successful, resulting in an agreement memorialized in a fully-executed term sheet, which was finalized during the evening April 3, 2023. During the months that followed, the parties negotiated the detailed terms of the Settlement Agreement and exhibits thereto, which are provided to the Court herein.

### C.     **Ms. Angelo and Ms. Thompson.**

#### 1.     **Ms. Angelo.**

As stated above, On April 3, 2023, mediation was conducted with the assistance of JAMS mediator, Robert A. Meyer (one of the country's leading class action mediators in ERISA class action cases). The mediation lasted approximately twelve hours. It was a long and exhausting process. Eventually, the parties reached an agreement, subject to Court approval, to resolve this case on a class-wide basis. The mediator requested them to draft and sign a term sheet that included certain material components of the parties' agreement before the conclusion of the mediation. The term sheet was drafted, edited, and eventually signed by all participants before the conclusion of the mediation.

The following day, Ms. Angelo and the Defendants jointly filed a mediation report to inform the court that the case had "settled in full." (ECF 24.) Thereafter, the parties' counsel began drafting the appropriate more fulsome settlement documents. Thereafter, Ms. Angelo initially expressed some reluctance about continuing with the settlement. So, as a result, Class Counsel sought permission to withdraw as counsel for Ms. Angelo in her individual capacity. That Motion

was granted by the Court on August 8, 2023.  (ECF No. 33).  Ms. Angelo was given until May 18, 2023, to find new counsel to represent her individually.  (ECF No. 33).  On May 21, 2023, attorney Scott M. Behren filed a notice of appearance to appear on her behalf.  (ECF No. 35.)  Mr. Behren represents Ms. Angelo in her individual capacity.  He does not seek to be included as Class Counsel here, nor was he made Class Counsel by the Court  (*See* ECF 50, p. 3, ¶ 2).

On August 1, 2023, Ms. Angelo filed a notice of consent with the Court indicating as follows: "Plaintiff Grace Angelo consents to settlement in this matter as previously reached between the parties."  (ECF No. 42).   Finally, as to Ms. Angelo, in accordance with Fed.R.Civ.P. 23(e)(3), the parties want the Court to know that Ms. Angelo negotiated a separate general release agreement of non-ERISA employment claims for $12,000, which is being paid separately and not from the Settlement Fund.[2]

### 2.      Ms. Thompson.

Soon thereafter, another class member, Kerstin Thompson, retained Class Counsel and agreed to serve as a Class Representative. To that end, Class Counsel filed a Motion to Amend adding Ms. Thompson as an additional Named Plaintiff/Class Representative.  (ECF Nos. 31, 37). Defendants have no objection to Ms. Thompson serving as the Class Representative.  The settling parties respectfully ask that this Honorable Court permit Ms. Thompson to serve as the Class

---

[2] The separate general release agreement was also disclosed to Gallagher, the Independent Fiduciary. Payments in settlement of unrelated individual claims are permissible and do not violate the Eleventh Circuit's prohibition against incentive payments, as this Court recently found under similar circumstances in *Baja v. Costco* (S.D. Fla. 0:21-cv-61210-AHS, December 20, 2022)("....general release payment[]s do[] not constitute a prohibited incentive award as described in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). The general release payment was made in consideration for [Angelo's] release of any and all claims [s]he individually could have or did assert in the action, including claims under federal law, state or local laws, statutes, regulations, ordinances, or federal or state common law. Thus, the general release payment cannot reasonably be characterized as an impermissible 'salary,' 'bounty,' or payment given to a class representative 'simply by reason of his status.' *See Johnson*, 975 F.3d at 1259 n.9 (citations omitted). Johnson specifically dealt with an explicit 'incentive payment' awarded in 'acknowledgement of [the class representative's] role in prosecuting the case on behalf of the class members.' Id. at 1248. That is nothing like the case here.")

Representative to ensure the rights of the class are protected and, additionally, to protect the settlement both sides worked extremely hard to reach (at tremendous expense).

Finally, as to Ms. Thompson, in accordance with Fed.R.Civ.P. 23(e)(3), the settling parties want the Court to know that Ms. Thompson entered into a separate general release agreement for $1,000, to compensate her for non-ERISA wage related claims which she may have against Defendants and that such amount is being paid separately and not from the Settlement Fund.

     **D.**    **The Settlement Agreement.**

     **1.**    **Benefits to Class Members.**

The Settlement provides for a monetary payment of $615,000.00 as compensation to the Settlement Class. (*See* Ex. A, Settlement Agreement § 4.2.) This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; and any Class Counsel fees and costs approved by the Court. (*Id*. § 4.2.) The remaining "Net Settlement Amount" will be distributed to Settlement Class Members pursuant to the proposed Plan of Allocation. (*See id.* §§ 4.7.1, 4.7.2.)

Under the terms of the Settlement Agreement, within thirty (30) days of the entry of the Preliminary Approval Order, Defendants shall pay $50,000 into the Qualified Settlement Fund to allow for payment of initial Administrative Expenses and Independent Fiduciary Expenses that may arise before the Court's entry of the Final Approval Order and Judgment.  (*See* Settlement Agreement § 4.2.)  Within thirty (30) calendar days of the Effective Date of the Settlement Agreement, Defendants shall pay an additional $565,000 into the Qualified Settlement Fund. (Settlement Agreement § 4.2.) The sum of these two payments, $615,000, shall constitute the "Gross Settlement Amount. (Settlement Agreement § 4.2.)

The Settlement Fund is being administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 2.43.) The Net Settlement Amount shall be distributed to Settlement Class Members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the Parties). Any Net Settlement Amount remaining after the settlement distributions are made and all Administrative Costs or applicable taxes have been paid, if any, shall be used to defray Plan expenses.  (*Id.* § 4.8).

### 2.    <u>Retention of an Independent Fiduciary</u>.

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement Agreement provides that NCL will select an Independent Fiduciary to review the Settlement and provide, if the Independent Fiduciary concludes that it is appropriate, the authorization required by that Exemption on behalf of the Plan. The Independent Fiduciary must provide a report memorializing its determination prior to the final approval hearing set by this Court. Accordingly, in addition to this Court's review and approval, the Settlement was evaluated by an experienced independent fiduciary whose sole loyalty is to the Plan, and that fiduciary has evaluated the Settlement as to whether it is (1) reasonable in the light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest.

As evidenced by Gallagher's attached report (*see generally* Exhibit D), Gallagher followed each of these requirements and approved the settlement.  This Honorable Court should do the same.

### 3.    <u>Attorneys' Fees and Costs</u>.

Any Attorneys' Fees and Costs the Court may award will be paid from the Gross Settlement Fund. (*See generally* Article III of the Stip.)  Class Counsel will petition the Court for an award of

attorneys' fees not to exceed one-third (33.3%) of the Gross Settlement Amount, plus reasonable expenses. (*Id.*)  The Settlement is not contingent on any such fees or costs being awarded.

### 4.    <u>Release of Claims</u>.

Under the terms of the Settlement Agreement, Plaintiff and the Settlement Class Members, on her own behalf and on behalf of their current and former beneficiaries, their representatives, and their successors-in-interest, and the Plan absolutely and unconditionally release and forever discharge Defendants and the other Released Parties from all Released Claims, as set forth in more detail in Section 8 of the Settlement Agreement. (*Id.* §§ 2.41, 2.42.)  Ms. Angelo has not released her individual, non-ERISA claims, which are being handled by Mr. Behren.

### 5.    <u>Notice and Objections</u>.

Although no objection has been filed to the Settlement, and time for doing so has passed, pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provided for notice to the Class and an opportunity for Settlement Class Members to object to approval of the Settlement. The form and method of notice of the proposed Settlement satisfied all due process considerations and met the requirements under Rule 23(e)(1).

The Settlement Notice is attached to the Settlement Agreement. The Settlement Notice fully apprised Settlement Class Members of the existence of the lawsuit, the Settlement, and information they need to make informed decisions about their rights, including (1) the terms of the Settlement; (2) the nature and extent of the Released Claims and Released Parties; (3) the maximum attorneys' fees and expenses Class Counsel will seek; (4) the procedure and timing for objecting to the Settlement; (5) the date and place of the final fairness hearing; and (6) the website that will contain the settlement documents and other  information about the Settlement and the litigation.

The notice plan consisted of the following steps: First, the Settlement Notice was sent by electronic means, or by first-class mail, to all Settlement Class Members identified by the Settlement Administrator, using the last mailing address known to the Plan's recordkeeper.

Second, the Settlement Administrator provided a dynamic website allowing Settlement Class Members answers to frequently asked questions, court documents, and the ability to email the Settlement Administrator with questions. Third, the Settlement Administrator provided an IVR call center, which Settlement Class members were able to call toll-free 24 hours a day, 7 days a week. Fourth, the Settlement Administrator took additional action to reach those Settlement Class Members whose notice letters are returned as undeliverable. Accordingly, both the form of notice and procedures for notice satisfied the requirements of due process. All of these elements and required procedures have been met here.

**6.**     **<u>The Class Members' Reactions to the Settlement</u>.**

The Settlement Administrator, American Legal Claims, sent the Court-approved Class Notice to the Settlement Class Members beginning January 26 through February 4, 2022. (Exhibit B, Unkefer Dec., ¶¶ 5-8). A total of 7,624 Settlement Notices were either mailed or emailed to members of the Settlement Class in accordance with the Court's Preliminary Approval Order. (Exhibit B, Unkefer Dec., ¶¶ 5-8). The Settlement Notice informed Settlement Class Members that if they wished to object to the Agreement, they were required to provide a written statement to the Court and serve it upon Counsel for the parties postmarked by January 16, 2024. (Exhibit B, Unkefer Dec., ¶ 8). To date, **<u>no objections</u>** have been made to the Settlement. (*Id.*). The undersigned also personally spoke with dozens of class members (or more) who called with questions, all of whom supported the Settlement. (*See* Exhibit C, Hill Decl., ¶¶ 27-28). Given these facts, the Settlement Class Members' reactions are overwhelmingly positive. Such a positive

reaction from 7,000+ class members unquestionably supports granting final approval of the Parties' settlement.

<p style="text-align:center;">7.      <strong><u>CAFA Notice</u></strong>.</p>

As specified by paragraph 3.2 of the Settlement Agreement, Defendants prepared and sent notices to the Attorney General of the United States and to the Attorneys General of all states in which Class Members reside, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  Brockman Decl. ¶ 2 (attached as Ex. E).  None of the government actors served with the CAFA notice have objected to the settlement.  Id. ¶ 3.

**II.     <u>MEMORANDUM OF LAW</u>.**

**A.     <u>Legal Standard</u>.**

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co*., 559 F.2d 426, 428 (5th Cir. 1977).  A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See id*. at 428; *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.  *See*

*Bennett*, 737 F.2d at 986.  In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," Courts are often "hesitant to substitute its own judgment for that of counsel." *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). For the reasons discussed below, the application of the recently amended Rule 23(e) factors, as well as the analogous *Bennett* factors, unquestionably demonstrates that the Settling Parties' proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

> ### B.      The Class Has Already Been Certified on a Preliminary Basis.

Beginning with the issue of class certification, the Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(1).  Since the Court's Preliminary Approval Order, no objections addressing class certification were received. The deadline to object has passed.  Thus, there is no reason to re-visit the Court's prior ruling.

> ### C.      All Relevant *Bennett* Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.

> #### 1.      Likelihood of Success at Trial and Range of Possible Recovery (*Bennett* Factors 1–3).

The first three *Bennett* factors—which include (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable—are unquestionably satisfied by the Settlement. Although "[a] determination of a reasonable settlement is not susceptible to a precise equation yielding a particular sum," *In re NetBank, Inc., Sec. Litig.*, No. 07-2298, 2011 WL 13176646, at *4 (N.D. Ga. Nov. 9, 2011), the Settlement represents an outstanding result considering both the strength of Plaintiffs' claims and the strength of Defendants' defenses. *See also Bennett*, 737 F.2d

at 987 (citation omitted) ("[A] just result is often no more than an arbitrary point between competing notions of reasonableness.")   In fact, the Settlement requires Defendants to pay $615,000.00 for the benefit of the proposed Settlement Class.

Moreover, the $615,000.00 recovery falls well within the range of reasonableness in this case, as it is a substantial percentage of the estimated recovery Plaintiff's counsel estimated could be recovered if successful in litigating the case through trial (exclusive of attorneys' fees and costs). *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").  Absent this Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court.  Liability is heavily contested, and both sides would face considerable risks should the litigation proceed.  In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial recovery for Settlement Class Members.

The $615,000.00 cash payment represents a substantial recovery, and the result here is enhanced as summarized above. These results are particularly beneficial to the Settlement Class in light of the risks posed by continued litigation, including the possibility of the Court finding no liability or the inability to prove damages.  While Plaintiff believes that the claims asserted against Defendants are meritorious, they recognize that Defendants strongly disagree, and that Plaintiff's claims present a number of substantial risks to establishing both liability and damages.  There is no certainty that Plaintiff would have avoided summary judgment, and even if she had, there is no certainty that they would have prevailed at trial.  Defendants mounted a vigorous defense to Plaintiff's claims and have set forth multiple defenses—affirmative and otherwise—in their pleadings.

Additionally, with respect to the primary question of liability, Defendants claim that they effectively managed the Plan and had prudent processes in place to evaluate the Plan's investments and its recordkeeping and administrative fees.  Defendants claim that their choices were within the range of choices made by other similarly situated plan fiduciaries at the time they were made.  Defendants also contend that Plaintiff overstated the potential damages she and the class could recover at trial, even assuming Plaintiff could establish liability.

Notably, a lawsuit involving similar issues resulted in a verdict for defendants on all claims. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 317 (S.D.N.Y. 2018).  Following appeal, the Second Circuit affirmed the trial judgment in its entirety. *Sacerdote v. New York University*, Case No. 18-2707-cv (2nd. Cir. August 16, 2021.)  As *Sacerdote* case clearly illustrates, Plaintiff faced a substantial risk that she could litigate this case for years, at significant expense, only to lose at trial and on appeal, recovering nothing for the class.

In sum, under the Settlement, the Settlement Class Members can quickly realize a portion of their alleged damages from the Qualified Settlement Fund.  Even if the amount is less than the minimum that could have been recovered through successful litigation, the settlement is fair, reasonable, and adequate.  For these reasons, the first three *Bennett* factors thus support final approval by the Court of the Settlement.

2. **Complexity, Expense, and Duration of the Litigation (*Bennett* Factor 4), and Stage of Proceedings at Which Settlement Was Achieved (*Bennett* Factor 6).**

The fourth *Bennett* factor, which requires an analysis of the complexity, expense, and duration of the litigation, also favors the Court granting final approval of the Settlement.  So does the sixth factor, the proceeding at which the settlement was achieved.  Below the two are analyzed together because they are interrelated.

"The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts v. TD Bank, N.A.*, No. 14-20744, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015).

The Settlement was the product of hard-fought litigation, which included substantial motion practice, pre-suit investigative discovery, and the retention of knowledgeable and qualified experts who performed damage analyses. As set forth *supra*, Class Counsel initiated the investigation into the Plan before it was filed by requesting from Defendants a litany of Plan documents relevant to Plaintiffs' claims. The volume of documents included but was not limited to, documents required by ERISA to be made available to plan participants. Those documents were then utilized and assisted in the development of Plaintiff's claims here.

Additionally, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. Where there "is no evidence of any kind that the Settling Parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005). Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. It is recognized that the opinion of experienced and informed counsel supporting the settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983).

Importantly, the Settlement was the result of a successful mediation before a class-action mediator, and several months of further negotiations thereafter. *See D'Amato v. Deutsche Bank*,

236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In sum, this litigation was extraordinarily complex, lengthy, and expensive for the Settling Parties. That expense was incurred after significant time was spent litigating, conducting discovery, and motion practice. The Settlement "offers the [Class Members] a certain and substantial recovery . . . in what would otherwise be an uncertain, lengthy, and expensive endeavor." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2008 WL 11319971, at *4 (N.D. Ga. Mar. 4, 2008). Therefore, the fourth and sixth *Bennett* factors strongly supports approval of the Settlement.

### 3.    Substance and Amount of Opposition to Settlement (*Bennett* Factor 5).

The remaining *Bennett* factor Courts typically consider is the substance and amount of opposition to the settlement—the fifth *Bennett* factor. Because there is no opposition to the Settlement, this element is easily satisfied.

To be sure, "the reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014). As described above, the Settlement Administrator provided notice of the Settlement to 37,478 Class Members. Not a single class member objected. This last *Bennett* factor supports the Court granting final approval of the Settlement. *See, e.g., Lipuma.*, 406 F. at 1319; *see also Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) (granting final approval of class action settlement, nothing that "[n]o members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

**D.**     **In addition to the *Bennett* Factors, All Rule 23(e) Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.**

Next, pursuant to 2018 amendments to Rule 23, when analyzing whether to grant final approval of a class action settlement, courts typically look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed.R.Civ.P. 23(e)(2). This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

**1.**     **The Class Representative and Class Counsel Have Adequately Represented the Class.**

The central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

Here, Class Representative, Kristin Thompson, is a participant in the Plan and allegedly suffered a pro rata loss because of Defendants' alleged fiduciary breaches with regard to excessive administrative and recordkeeping fees, among other alleged problems. Like other Settlement Class Members, the proposed Class Representative seeks to maximize the recovery to the Settlement Class through this litigation. She has no interests antagonistic to the claims of any Settlement Class Member. *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 348 (N.D. Ill. 2008). The Plaintiff's interests are, thus, fully aligned with the interests of Settlement Class Members.

Furthermore, the Plaintiff has been and remain willing and able to take the required role in the litigation to protect the interests of those she seeks to represent. As one district court has noted, it is sufficient for an ERISA case if a proposed class representative "understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan" and, further,

that she "understands her obligation to assist her attorneys and testify." *Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004). Plaintiff understands has demonstrated her commitment to this case by stepping in when class counsel encountered difficulties with Ms. Angelo, participating in the settlement process post-mediation, and otherwise behaving as an exemplary class representative.

Finally, as discussed further below, Plaintiff retained counsel with significant experience in ERISA class actions. When, as here, the Settlement Class is represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *See, e.g., Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan,* No. 08-61018-CIV, 2011 WL 13173025, at *10 (S.D. Fla. July 12, 2011)("The view of the attorneys actively conducting the litigation regarding the appropriateness of a proposed settlement is "entitled to significant weight"); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 635 (6th Cir. 2007) ("In deciding whether the settlement is fair, reasonable, and adequate, the Court must look to the opinions of class counsel and class representatives."). Simply put, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2.     The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before a Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the parties and their counsel.

Not only that, but the parties also used a highly respected mediator in this case, Bob Meyer, Esq., who has extensive experience handling ERISA fiduciary-breach lawsuits like this one. Mr. Meyer's involvement as the mediator also supports finding the settlement fair, reasonable, and

adequate.  *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules–2018 Amendment ("[T]he involvement of a neutral or court- affiliated mediator ... may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *accord Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015).

Finally, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions.[3]  Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate."  *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3.   The Settlement Provides Adequate Relief to Class Members.

The relief to Settlement Class Members satisfies the third Rule 23(e)(2) factor.  The $615,000.00 secured by Plaintiff for the Settlement Class Members falls well within the range of reasonableness in this case.  It is also a substantial percentage of the estimated recovery Plaintiffs' counsel estimated could be recovered if successful in litigating the case through trial (exclusive of attorneys' fees and costs).

As set forth above, continuing the litigation would have been complicated, protracted, and expensive.  The risk of Plaintiff being unable to establish liability was also present because of the numerous defenses asserted by Defendants, including at both summary judgment and trial.  Each of these remaining phases of the litigation posed serious risks, which the Settlement allows

---

[3] *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks").

Plaintiffs and the Settlement Class Members—and Defendants—to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").   In sum, through this Settlement, the parties avoid the cost of protracted litigation.  The Settlement Class Members can quickly realize a portion of their possible damage claims from the Qualified Settlement Fund, even if the amount is less than what could have been recovered through successful litigation.  The Class Representative, Kristin Thompson, supports the Settlement, as do the Settlement Class Members—evidenced by the lack of objections.  Thus, the third Rule 23(e)(2) factor remains satisfied.

**4.      The Proposal Treats Class Members Equitably.**

Finally, the last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats Settlement Class Members equitably relative to each other.  The detailed "Plan of Allocation" summarized is set forth in Section 4.6 of the Settlement Agreement, which Plaintiff incorporates by reference here.  Thus, the final Rule 23(e)(2) factor is met.

**WHEREFORE**, Plaintiff respectfully moves this Court to grant this Motion and enter the Proposed Order attached as Exhibit A.

**Certificate of Compliance with Local Rule 7.1**

Pursuant to Local Rule 7.1 of the District Court for the Southern District of Florida, counsel for Plaintiff Kristin Thompson certifies that Defendants do not oppose this Motion.

Dated this 29th day of January, 2024.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ *Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
**BRANDON J. HILL**
Florida Bar Number: 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
***Attorneys for Plaintiff Kristin Thompson
and the Class***

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2024, I caused a true and correct copy of the foregoing to be filed using the Clerk of Court's CM/ECF system, which then caused a notice of electronic filing on all Counsel of Record.

<div style="margin-left: 50%;">

/s/ *Brandon J. Hill*
**BRANDO N J. HILL**

</div>